[Civ. No. 23599.   Second Dist., Div. Two.   May 22, 1959.]

VIVIAN ANN HUNTER, Appellant, v. HUBERT W. HUNTER, Respondent.

Chandler & Armstrong and Joseph A. Armstrong for Appellant.

Martin J. Munson for Respondent.

HERNDON, J.—Plaintiff appeals from an order quashing a writ of execution issued to enforce provisions of an interlocutory decree of divorce requiring defendant to make payments for support of children.

## Chronology

(1) February 14, 1957: Plaintiff and defendant executed a property settlement agreement providing, among other things, that plaintiff should have custody of two minor daughters, aged 7 years and 15 months, respectively, and that defendant agreed to pay for the support of each of said children the sum of $60 per month, commencing on February 5, 1957, and continuing until said children attained the age of majority, become self-supporting, or until modified by proper order of court.

(2) March 29, 1957: After a default hearing, plaintiff was granted an interlocutory decree of divorce by the Los Angeles County Superior Court. This decree ordered defendant to make the child support payments as provided in the property settlement agreement. The decree was duly entered on April 1, 1957.

(3) April 26, 1957: (a) At Las Vegas, Nevada, plaintiff executed and delivered to defendant an instrument entitled "Release and Relinquishment" which purported to release defendant from the obligation to pay any support money for the children during the period April 26, 1957, to April 26, 1958. This instrument is quoted in full in the margin.[1] (b) On

---

[1] "April 26, 1957

RELEASE AND RELINQUISHMENT

For a good and sufficient consideration, receipt of which is hereby acknowledged, I, VIVIAN HUNTER, hereby release and relinquish every claim against HUBERT W. HUNTER for the payment to me of money for the support during the period April 26, 1957 to April 26, 1958, of Judy Hunter, aged seven years, and Janet Hunter, aged seventeen months.

DATED this 26th day of April, 1957, at Las Vegas, Nevada.

Vivian Hunter
Vivian Hunter"

the same date (April 26, 1957) the District Court for Clark County, Nevada, granted plaintiff a decree of divorce. This decree recites that plaintiff appeared personally and by her attorney, and that defendant appeared by his attorneys. It decrees a dissolution of the marriage, granted the care, custody and control of the children to the plaintiff and approved a property settlement agreement dated February 14, 1957. The property settlement agreement was not incorporated into the decree, either in whole or in part.

(4) January 27, 1958: An ex parte order was made in the Los Angeles action (the instant action) directing the issuance of execution. This order was made upon plaintiff's affidavit stating that nothing had been paid by defendant on account of the support order contained in the interlocutory judgment, and that the sum of $1,200 had accrued thereunder.

(5) April 22, 1958: Final judgment of divorce was entered herein.

(6) June 2, 1958: Defendant filed his notice of motion to quash the writ of execution.

(7) June 9, 1958: The motion to quash writ of execution was granted.

Defendant's affidavit in support of his motion to quash is brief. It alleges in substance: (a) that the interlocutory judgment in the present action was entered on April 1, 1957; (b) that prior to April 1, 1957, plaintiff established residence in the State of Nevada; (c) that on April 26, 1957, plaintiff obtained a decree of divorce in Nevada, a copy of said decree being attached to the affidavit; and (d) that on April 26, 1957, plaintiff by an instrument in writing attached to the affidavit as Exhibit B had released and relinquished any claim against defendant for the payment of money for the support of said minor children during the period April 26, 1957, to April 26, 1958.

Plaintiff's affidavit in opposition to the motion is more lengthy. After referring to the interlocutory judgment of divorce herein, and to its provisions approving the property settlement agreement and ordering the payment of child support, she alleges in substance: that the Nevada decree of divorce was entered less than six weeks after plaintiff went to Nevada following the granting of her interlocutory judgment on March 29, 1957, in Los Angeles; that the minimum residence required by Nevada to establish residence for divorce purposes is six weeks; that immediately upon entry of the Nevada decree plaintiff returned to California where she has resided ever

since; that at all times while plaintiff was in Nevada she maintained a home in California where her two daughters were living; that plaintiff, at all times, intended to return to California immediately upon the entry of the Nevada decree; that plaintiff was informed by her Nevada attorney "that the Nevada decree would not interfere with her California divorce but would enable her to marry one Clayton Powell and further, that it would be necessary for [defendant] to appear and defend in Nevada, and relying upon these representations [plaintiff] went through a divorce proceeding in Nevada"; that plaintiff informed defendant "that it was necessary for him to appear and defend in Nevada so that she would be able to marry one Clayton Powell pending the California divorce but that the defendant informed [plaintiff] that he had no objection since the interlocutory decree had been given but that he would do so only if [plaintiff] would agree that said [defendant] would not have to pay child support for his two minor children for a period of one year . . . That [plaintiff] did thus agree for the sole purpose of having the defendant . . . appear in the Nevada court in order that [plaintiff] might be free to marry Clayton Powell; that [defendant] told [plaintiff] that he also wished to be free to marry his present wife, Barbara Hunter, pending the California decree becoming final."

Plaintiff first argues that the Nevada court was without jurisdiction either to grant a divorce or to make any order with respect to the children. She premises this argument upon the allegations of her affidavit to the effect that she was never a bona fide resident of Nevada and that the children were never domiciled or physically present in that state. It is unnecessary for us to decide any question with respect to the validity or effect of the Nevada decree. For the purposes of this appeal, we may assume, as plaintiff contends, that the Nevada decree had no adverse effect upon her right to enforce the support order contained in the California interlocutory divorce decree.

Plaintiff's second contention is that the agreement by which she purported to release defendant from his obligation to pay child support for one year cannot be given legal effect. She seeks to invoke the settled law that as a matter of public policy parents will not be permitted to bargain away or abridge the rights of their children to support. (*Krog* v. *Krog*, 32 Cal. 2d 812, 817 [198 P.2d 510]; *Allen* v. *Allen*, 138 Cal.App.2d 706, 708-709 [292 P.2d 581]; see *Rosher* v. *Superior Court*,

9 Cal.2d 556, 559 [71 P.2d 918] ; *Chiarodit* v. *Chiarodit*, 218 Cal. 147, 153 [21 P.2d 562] ; *Kaulalyst* v. *Frazier*, 213 Cal. 377, 381 [2 P.2d 362] ; *Lewis* v. *Lewis*, 174 Cal. 336, 341 [163 P. 42].)

A child's right to support cannot be barred by a property settlement agreement between the parents. (*Krog* v. *Krog, supra*, 32 Cal.2d 812, 817.) The trial court is not bound by the agreement of the parents and may award more or less than the amount agreed upon by them for child support. (*Beaulac* v. *Beaulac*, 84 Cal.App.2d 649, 650-651 [191 P.2d 478].) Upon an application for an award of child support, the trial court may order the father to pay notwithstanding the existence of an agreement by which the mother purported to release the father from all liability for support of their children. (*Allen* v. *Allen, supra*, 138 Cal.App.2d 706, 708-709.) In such an application the mother is enforcing the children's right to support—a right which cannot be limited or abridged by the agreement of the parents. (*Allen* v. *Allen, supra*, 138 Cal.App.2d 706, 709 ; *Metson* v. *Metson*, 56 Cal.App.2d 328, 332 [132 P.2d 513].) In such cases the determinative questions before the trial court are the needs of the children and the ability of the parent to pay. (*Gilbert* v. *Gilbert*, 98 Cal.App.2d 444, 446 [220 P.2d 573] ; *cf. Pencovic* v. *Pencovic*, 45 Cal.2d 97, 100 [287 P.2d 501].)

However, these settled principles have no application where, as in the instant case, the mother is attempting *on her own account* to execute on an order for support contained in a judgment of divorce. An order for support ". . . may be enforced by execution in the same manner as if it were a judgment." (Code Civ. Proc., § 1007; see Code Civ. Proc., § 681.) A judgment of divorce providing for support payments is a judgment payable in future installments (*Cochrane* v. *Cochrane*, 57 Cal.App.2d 937, 939 [135 P.2d 714]) and a writ of execution will issue as a matter of right as the amounts become due and are unpaid. (*Lohman* v. *Lohman*, 29 Cal.2d 144, 150 [173 P.2d 657] ; see 19 Cal.Jur.2d 317, § 5.) When the writ issues the burden is on the judgment debtor to establish facts justifying an order quashing the writ. *Lohman* v. *Lohman, supra*, 29 Cal.2d 144, 150 ; *cf. Wolfe* v. *Wolfe*, 30 Cal.2d 1, 5 [180 P.2d 345] ; *Parker* v. *Parker*, 203 Cal. 787, 793-794 [266 P. 283].)

As stated in *Wilkins* v. *Wilkins*, 95 Cal.App.2d 605, 610-611 [213 P.2d 748] : "While the creditor is, as a matter of right, entitled to an execution, the affidavit, order and

execution issued thereon are subject to review and the execution is subject to recall, upon motion, timely made, at which time the trial court may exercise its judicial discretion in determining whether the facts set forth in the affidavit are true, and whether there has been a misrepresentation of the facts or wilful suppression of facts which should have been related to the court in the first instance, or whether the husband was or was not under a legal duty to support the children or wife during the period in question. ▮ It therefore would appear that the trial court has, under the circumstances here related, the right to recall the execution and allow the enforcement of the judgment, only to the extent of the husband's legal and equitable liability to pay. If the rule were otherwise, a judgment creditor might falsely swear that a certain amount of money was due under the order, accumulated within the five-year period, when in fact the debtor had paid all or nearly all of the sums due prior to her application. It would be an injustice to hold that the execution must issue, as a matter of right, and the court had no power to order the execution withdrawn or to exercise its discretion in determining the truth of the facts related and to order enforcement according to the law and equities involved.'' (See also *Bryant* v. *Bryant,* 161 Cal.App.2d 579, 581-582 [326 P.2d 898].)

In the case at bar the plaintiff admits the execution of the release and she does not contend that it was unsupported by consideration or that it was induced by the fraud of defendant. Her position throughout these proceedings is that the agreement was not a bar to *her* execution on the judgment because the *children's* right to support from defendant could not be extinguished by the agreement of the parents. (*Cf. Plumer* v. *Superior Court,* 50 Cal.2d 631, 637 [328 P.2d 193]; *Puckett* v. *Puckett,* 21 Cal.2d 833, 843 [136 P.2d 1]; see 16 Cal.Jur.2d 571, § 277.) ▮ However, the recognized power of the court to protect the interests of the children does not automatically relieve plaintiff of the obligations into which she has entered. Under the terms of Civil Code, section 196, plaintiff, having custody of the children, was under a duty to support them. The effect of the support order was to reimburse plaintiff for the funds which she would expend in caring for the children. (*Cf. Di Corpo* v. *Di Corpo,* 33 Cal.2d 195, 200 [200 P.2d 529]; *Saunders* v. *Simms,* 183 Cal. 167, 171 [190 P. 806].) ▮ And in attempting to execute on the order ''. . . she is seeking, not funds for the current support of the children, but reimbursement for funds she has already

expended for their support.'' (*Di Corpo* v. *Di Corpo, supra,* 33 Cal.2d 195, 200.)

The parents by their agreement subsequent to the interlocutory decree could not have limited or abridged the rights of the children, but between themselves the agreement was binding. (*Allen* v. *Allen, supra,* 138 Cal.App.2d 706, 708; *cf. Puckett* v. *Puckett,* 21 Cal.2d 833, 843 [136 P.2d 1]; see Civ. Code, §§ 159, 160.) And on proof of an agreement between the parents by which the judgment debtor's obligation was satisfied, the trial court may quash the writ of execution which issued as a matter of right. (*Colby* v. *Colby,* 127 Cal.App.2d 602, 605-606 [274 P.2d 417]; *Millard* v. *Millard,* 102 Cal.App.2d 249 [227 P.2d 477].)

It should be observed that at no point has plaintiff contended that the children were in need or were inadequately cared for during the period in question as a result of the agreement into which she entered. (*Cf. White* v. *White,* 71 Cal. App.2d 390 [163 P.2d 89].) Nor are the children's rights prejudiced. By appropriate proceedings the support order is subject to modification notwithstanding the rights and liabilities of the parents *inter se* under their agreements. (*Allen* v. *Allen, supra,* 138 Cal.App.2d 706; see 16 Cal.Jur.2d 575, § 280.)

Affirmed.

Fox, P. J., and Ashburn, J., concurred.