[Civ. No. 26415. First Dist., Div. One. June 10, 1970.]

SONJA J. KAMINSKI, Plaintiff and Appellant, v.
RICHARD L. KAMINSKI, Defendant and Respondent.

## COUNSEL

Claude W. Heavin for Plaintiff and Appellant.

Suren Toomajian and James R. Holmstron for Defendant and Respondent.

## OPINION

**ELKINGTON, J.**—Plaintiff Sonja J. Kaminski appeals from a judgment declaring that she may not enforce collection in California of alimony and child support awards decreed by a Wisconsin divorce judgment against her ex-husband defendant Richard L. Kaminski.

The evidence is without conflict.

The parties were married in California in 1955 and thereafter moved to Wisconsin. A child was born to them in 1957. They separated some time after March of 1960, Sonja taking custody of the child. After Richard had returned to California Sonja commenced a Wisconsin action which resulted in a default judgment of divorce in April 1962. Among other things it provided that Richard pay to Sonja each week, $10 in alimony and $10 for the support of their child. The judgment further provided that Richard have the right "to visit said child at reasonable times and occasions."

Richard testified that some time after the divorce and prior to April 1963, Sonja's father told Richard "that she refused to see me or let me see the boy, and I decided there's no sense going back [to Wisconsin] after that." Richard endeavored to arrange for the boy's health and dental insurance but "she [Sonja] didn't want it." In April 1963, Richard telephoned Sonja

and asked to talk to the boy. She said, " 'As far as you're concerned, you're dead. He has no father and he thinks you're dead. Let's leave it that way.' " Richard insisted on talking to his son who then came on the phone and said, " 'Hello, I don't want to talk to you.' And that was the extent of the conversation." Sonja returned to the telephone saying, " 'See? Now, just stay out of my life and leave me alone. *I don't want anything from you at all.*' " (Italics added.)

On June 29, 1963, Sonja remarried. In 1966 "her present husband commenced adoption proceedings and the step-parent adoption was granted." Richard "contested it and failed, and at this time he has no rights whatever."

Richard never made any payment as required by the divorce judgment. Sonja at no time since the judgment "requested money in any way." In April 1967 Sonja commenced the California action from which this appeal emanates. The first knowledge that Richard had "that she was making a claim for alleged support arrearages was when [he was] served with this complaint and summons" in the instant action.

At the time of the commencement of the California action, Sonja having remarried and the child having been adopted by another, Richard admittedly was not *currently* obligated by the Wisconsin judgment of divorce.

The trial court concluded from the evidence that "Plaintiff is entitled to have the foreign judgment of divorce established as a California judgment in full force and effect save and except for the right to enforce the payment of any alleged support arrearages accrued under said foreign judgment; Plaintiff is estopped to assert the right to enforce collection of any alleged support arrearages accrued by virtue of her conduct and statement to defendant, and particularly, that she wanted nothing from defendant, upon which assertion defendant relied; [and] . . . Defendant is entitled to judgment against plaintiff estopping her from asserting any rights in this State to collect any accrued and unpaid support under the judgment." Judgment was entered accordingly.

From the evidence we must assume that the trial court concluded that Sonja by stating "I don't want anything from you at all," while denying to Richard his court-granted visitation rights, waived any claim for money under the divorce judgment.

Sonja's contention, in effect, is that one may not waive the benefit of a judgment against her divorced husband for alimony and child support.

In *Graham v. Graham,* 174 Cal.App.2d 678 [345 P.2d 316], a divorced husband was required by the judgment to pay $50 per month alimony and $80 per month for the support of two minor children. After a period he

reduced the total payments to $25 per week. During the following years the arrearages came to $2,900. At that point he sought court modification of the judgment; his erstwhile spouse responded with a demand for the $2,900 claimed to be past due. At the hearing the husband testified as follows: " 'Before I was married the second time, I went up there, we had an agreement, because I couldn't pay on the $130 a month and I told her we'd come to an agreement and I'd pay her $25 a month [*sic*—week]. He further testified 'Well, I just told her at that time I just couldn't pay $130 a month, so we talked it over and I said, "I'll pay you $25 a week," and that is the agreement I came to and I have been paying it ever since.' " (P. 682.) The trial court concluded that the husband was " 'not in any arrearages to plaintiff' " under the judgment and made its order accordingly.

On appeal from the order the appellate court found no error. The court stated (p. 682): "It is true, as argued by appellant, that defendant did not testify that plaintiff agreed to accept $25 a week in full payment of the court order of $130 per month, however, the inference that plaintiff did agree to waive the excess may be drawn from this testimony. This inference is strengthened by the undisputed fact that for almost 11 years defendant paid plaintiff the sum of $25 per week, neither more nor less, and by the further fact that during all of said time plaintiff took no legal steps whatsoever to enforce compliance with the court order. Under the well settled rules of judicial review above mentioned we cannot say that the finding in question is not adequately supported by the record." Responding to an argument that "an order for support cannot as a matter of law be modified [1] by an executed oral agreement, or [2] as to past due installments," the court stated (pp. 683-684): "Assuming, for the sake of argument only, that both of appellant's contentions are correct, nevertheless, we believe that she has misconstrued the finding of the trial court and that the point therefore is unimportant. The finding in question was based not upon the proposition, as appellant contends, that the *court order* was modified by the oral agreement, but rather, as respondent contends, that it was based upon the implied finding that appellant had waived all sums in excess of $25 per week. [¶] . . . There appears to be no valid reason why a woman cannot also waive her right to a portion of the alimony and support provided for by a decree of divorce so as to relieve her former husband of a charge of contempt based upon a wilful disobedience of said order. The mandate is clear that a court may not modify an award as to accrued installments (Civ. Code, § 139), but that is not the situation here. And the question here is not whether the parties themselves modified the *court order* but rather whether or not a *waiver* was effected by an agreement between plaintiff and defendant."

The case of *Hunter* v. *Hunter,* 170 Cal.App.2d 576 [339 P.2d 247],

also supports the conclusion of the trial court below. There, in a default divorce judgment entered by the Los Angeles County Superior Court, a defendant husband was ordered to pay $120 per month for the support of two minor children. Apparently dissatisfied with the one-year delay before the final decree, the wife, a month later instituted divorce proceedings in Nevada. While in that state she executed a document wherein she "released and relinquished" for one year her claim against her husband for the child support ordered by the California court. She thereafter obtained a writ of execution on the Los Angeles judgment for the period covered by the "Release and Relinquishment." A successful motion to quash the writ was made, from which the wife appealed.

On appeal the wife contended (p. 580): "that the agreement by which she purported to release defendant from his obligation to pay child support for one year cannot be given legal effect. She seeks to invoke the settled law that as a matter of public policy parents will not be permitted to bargain away or abridge the rights of their children to support. [Citations.]" The appellate court, however, stated (pp. 581-583): "these settled principles have no application where, as in the instant case, the mother is attempting *on her own account* to execute on an order for support contained in a judgment of divorce. . . . [¶] In the case at bar the plaintiff admits the execution of the release and she does not contend that it was unsupported by consideration or that it was induced by the fraud of defendant. Her position throughout these proceedings is that the agreement was not a bar to *her* execution on the judgment because the *children's* right to support from defendant could not be extinguished by the agreement of the parents. [Citations.] However, the recognized power of the court to protect the interests of the children does not automatically relieve plaintiff of the obligations into which she has entered. Under the terms of Civil Code, section 196, plaintiff, having custody of the children, was under a duty to support them. The effect of the support order was to reimburse plaintiff for the funds which she would expend in caring for the children. [Citations.] And in attempting to execute on the order '. . . she is seeking, not funds for the current support of the children, but reimbursement for funds she has already expended for their support.' [Citation.] [¶] The parents by their agreement subsequent to the interlocutory decree could not have limited or abridged the rights of the children, but between themselves the agreement was binding. . . . [¶] It should be observed that at no point has plaintiff contended that the children were in need or were inadequately cared for during the period in question as a result of the agreement into which she entered. [Citation.] Nor are the children's rights prejudiced. By appropriate proceedings the support order is subject to modification notwithstanding the rights and liabilities of the parents *inter se* under their agreements. [Citations.]"

We find the cases of *Spurrell* v. *Spurrell,* 205 Cal.App.2d 786 [23 Cal. Rptr. 414], and *McNabb* v. *McNabb,* 47 Cal.App.2d 623 [118 P.2d 869], heavily relied upon by Sonja, to be inapposite to the issues here presented. Those cases concerned the effect of a claimed denial to a father of visitation rights. No issues were there raised of waiver or estoppel, principles here applicable and which support the judgment of the superior court.

*Graham* v. *Graham, supra,* 174 Cal.App.2d 678, and *Hunter* v. *Hunter, supra,* 170 Cal.App.2d 576, fully support the conclusion and judgment of the trial court; there was no error.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.