[No. D004067. Fourth Dist., Div. One. Mar. 19, 1987.]

In re the Marriage of PATRICIA A. and LARRY L. AYO.
PATRICIA A. AYO, Appellant, v.
LARRY L. AYO, Respondent.

COUNSEL

James Scott Veltmann for Appellant.

Robert Dierdorff and Suuzen Ty Anderson for Respondent.

OPINION

**TODD, J.**—This appeal arises from a postdissolution family law proceeding involving a postjudgment stipulation in which the wife, Patricia A. Ayo (Patricia), agreed to hold the husband, Larry L. Ayo (Larry), harmless "from any claims of any kind" regarding their minor child, Troy. Insofar as we find the postjudgment agreement contravenes public policy, we declare it void, and, accordingly, we reverse the trial court in the instant action.

## FACTS

Larry and Patricia were married in 1974. Within a year, Larry adopted Troy, then four years old, who was Patricia's son from a previous marriage. Larry and Patricia separated in July 1977, and the marriage was dissolved in March 1978. Patricia was awarded custody of Troy, with Larry having visitation rights. Larry was ordered to pay $125 per month in spousal support until June 1978, and $125 per month in child support. Larry also was directed to pay Patricia $5,000 for her half of the community property.

In 1978 disputes arose between Larry and Patricia regarding visitation and support payments. In August 1978 Patricia obtained a writ of execution for $125 in unpaid child support and for $2,500—her unpaid share of the community property. The following month Larry brought a contempt proceeding against Patricia for disobeying the visitation order in the interlocutory judgment. In September 1978 Larry and Patricia made a new stipulation regarding visitation. A subsequent stipulation further modified visitation and provided that Larry pay the remaining balance due from the community distribution in installments of $50 per month beginning in January 1979.

In 1979, after Troy's natural father started visiting Troy, Larry proposed to Patricia a "rescission or unwinding" of the adoption, which would terminate the child support payments. In November 1979 Patricia agreed, accepting $1,800 from Larry in satisfaction of arrearages in the division of the community property and in child support for Troy. Patricia also agreed to hold Larry harmless from any claims regarding Troy. The agreement, signed by the parties and their counsel, stipulated to a court order incorporating the agreement, which was signed and entered by the superior court on November 28, 1979.

Patricia filed an order to show cause in May 1985, seeking to renew Larry's child support obligation and attorney's fees. The trial court bifurcated the proceeding into two issues: (1) child support for Troy; and (2) the validity of the 1979 agreement. The trial court awarded Troy $300 per month in child support from Larry beginning June 1985, and awarded Patricia $750 in attorney's fees. With regard to the second issue, the parties stipulated that the superior court's domestic law and motion department could decide the validity of the 1979 agreement. In an October 4, 1985, letter, the trial court issued its opinion, ruling: (1) the 1979 agreement to hold Larry harmless is valid; (2) Larry is still obligated to pay child support; and (3) Patricia is not entitled to attorney's fees relating to the legal interpretation of the 1979 agreement to hold Larry harmless. Patricia appealed the ruling on the

validity of the agreement and the denial of her request for attorney's fees in connection with that issue.

That, however, was not the end of the matter. Subsequent to the trial court's ruling, the parties disputed how it should be implemented. Patricia claimed she was entitled to collect $300 per month in child support from Larry, while Larry maintained that because Patricia had to indemnify him for child support as it was paid, no money should change hands.[1] Hence, Larry did not make any payments. In November 1985, Patricia filed a motion (1) to set arrearages for child support, (2) for payment of the support by wage assignment, and (3) for attorney's fees. The trial court found Larry was in arrears in the amount of $2,100. It ordered a wage assignment, which Larry's business disregarded. Patricia then filed an order to show cause for contempt. Larry responded by filing a show cause proceeding for sanctions against Patricia, claiming her attempts to collect the court-ordered child support were bad-faith acts in violation of the 1979 agreement that the court had ratified.

In August 1986 the parties stipulated to a suspension of the contempt and sanction proceedings pending this appeal, and Larry agreed to post a performance bond of $3,900.[2]

### DISCUSSION

As a preliminary matter, we set out certain basic principles that govern our analysis.

■ First, when children are adopted, the law treats them the same as natural children. Civil Code section 228[3] provides: "A child, when adopted, may take the family name of the person adopting. After adoption, the two shall sustain towards each other the legal relation of parent and child, and

---

[1] On appeal, Larry has changed his position somewhat. He now maintains that he "is willing to insure that Troy has the necessary support during his minority." Larry proposes that the trial court determine Patricia's ability to indemnify Larry. Under Larry's proposal, if the trial court finds that Patricia is able to make indemnity payments equal to the child support the court has ordered, then the child support payments should be suspended. If the trial court finds that Patricia is unable to make indemnity payments, then (1) Larry would pay the child support and have the same rights of any other judgment creditor to any financial windfall Patricia receives, and (2) when Troy reaches his majority (Nov. 2, 1988), Larry could obtain a writ of execution under the 1979 agreement for all accrued and unpaid indemnity amounts owed by Patricia.

[2] The factual material in the two preceding paragraphs is taken from portions of the trial court file not included in the record on appeal. We judicially notice these documents, included in appendices to Patricia's appellate briefs, pursuant to Evidence Code sections 452 and 459.

[3] All statutory references are to the Civil Code unless otherwise specified.

have all the rights and be subject to all the duties of that relation." Troy stands to Larry no differently than if he were Larry's natural son.

 Second, parents have a statutory obligation to provide for the support of their minor child. (*Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 947 [126 Cal.Rptr. 805, 544 P.2d 941]; *Lyons* v. *Municipal Court* (1977) 75 Cal.App.3d 829, 840 [142 Cal.Rptr. 449]; §§ 196,[4] 242, 4700, 4703; Pen. Code, § 270.) The trial court has the authority to order either the father or the mother or both to contribute to the minor child's support. (*Nunes* v. *Nunes, supra,* 62 Cal.2d 33, 39 [41 Cal.Rptr. 5, 396 P.2d 37]; *Kresteller* v. *Superior Court, supra,* 248 Cal.App.2d 545 [56 Cal.Rptr. 771].) Larry 's obligation to support Troy did not end by virtue of his lack of custody. The trial court's order that Larry pay $300 per month in child support for Troy was proper.[5]

With these principles in mind, we turn to the November 28, 1979, agreement between Larry and Patricia. The agreement reads: "Comes now PATRICIA AYO, petitioner herein, and through her attorney William R. O'Connell and stipulates and agrees with respondent LARRY AYO, individually and through his attorney Robert T. Dierdorff as follows:

"1. That petitioner PATRICIA AYO accepts the sum of ONE THOUSAND EIGHT HUNDRED DOLLARS ($1,800.00) as payment in full for any and all claims whatsoever against respondent LARRY AYO. Petitioner, PATRICIA AYO covenants,

---

[4]Section 196 provides: "The father and mother of a child have an equal responsibility to support and educate their child in the manner suitable to the child's circumstances, taking into consideration the respective earnings or earning capacities of the parents." (Stats. 1980, ch. 1341, § 2.) Until January 1, 1981, section 196 provided: "The parent entitled to the custody of a child must give him support and education suitable to his circumstances. If the support and education which the father of a child is able to give are inadequate, the mother must assist him to the extent of her ability." Despite the language regarding custody, case law construing the legislative intent behind former section 196 made it clear that the support obligation did not rest solely with the custodial parent. (*Nunes* v. *Nunes,* (1964) 62 Cal.2d 33, 39; *Kresteller* v. *Superior Court* (1967) 248 Cal.App.2d 545, 546-548; *In re Marriage of Muldrow* (1976) 61 Cal.App.3d 327 [132 Cal.Rptr. 48].) Further, the court in *Lyons* v. *Municipal Court, supra,* 75 Cal.App.3d 829, noted in discussing the legislative intent behind former section 196: "If any doubt remained concerning the legislative intent to impose upon both parties the obligation of child support, that doubt was removed with the enactment of the Family Law Act. (Stats. 1969, ch. 1608, § 8, p. 3314, operative Jan. 1, 1970.) Civil Code section 4700 expressly provides that the court may order 'either or both parents to pay any amount necessary for support, maintenance, and education of the child.' Clearly the child support obligation imposed by law upon each of the parents continues notwithstanding the parent's lack of custody. [Citation.]" (*Id.* at p. 841.)

[5]"The extent of the parental support obligation is left to the sound discretion of the court [citations] and the trial court's order will not be disturbed on appeal unless that discretion is abused. [Citation.]" (*Armstrong* v. *Armstrong, supra,* 15 Cal.3d at p. 947.) Since neither side has questioned the $300 figure, it is obvious the trial court did not abuse its discretion.

promises and agrees to hold respondent LARRY AYO harmless from any claims of any kind regarding her minor child TROY.

"2. Respondent LARRY AYO upon the payment of ONE THOUSAND EIGHT HUNDRED DOLLARS ($1,800.00) and in consideration thereof forever forsakes and abandons any rights, claims, interest in or rights to petitioner's minor child TROY.

"3. Each party agrees to execute any papers or documents reflecting the intention of the agreement herein.

"[signatures of each party and each party's attorney follow]

"IT IS SO ORDERED.

"Date: Nov. 28, 1979 (signed,)

G. Dennis Adams,
Judge of the Superior Court"

Section 4802 provides in pertinent part: "[A] husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, and except that they may agree, in writing, to an immediate separation, and may make provision for the support of either of them and of their children during such separation or upon the dissolution of their marriage. The mutual consent of the parties is a sufficient consideration for such an agreement."

Notwithstanding the right of parents to enter into agreements regarding child support and custody, such agreements are not the last word on the subject, for the law views the welfare of the children as a paramount concern. "[I]t is settled law in this state that a minor's right to support and maintenance by his father may not be limited or contracted away by his parents. [Citation.]" (*Fernandez* v. *Aburrea* (1919) 42 Cal.App. 131, 132 [183 P. 366].) In *Puckett* v. *Puckett* (1943) 21 Cal.2d 833 [136 P.2d 1], our Supreme Court noted that divorced parents may contract with each other with respect to custody and support of their minor children. However, the *Puckett* court added: "But inasmuch as the children's welfare is the factor of paramount concern, the children are not bound by the contract, and the law vests in the court power to provide for the custody and control of minor children. No such contract may, insofar as the children are concerned, abridge the power of the court in appropriate proceedings to provide for the support of the children by their parents or for their custody." (*Id.* at p. 839.)

■ It is clear that the law imposes upon parents the obligation of supporting their children and the children's right to such support cannot be limited or abrogated by their parents. As the Supreme Court observed in Lewis v. Lewis (1917) 174 Cal. 336, 339 [163 P. 42]: "As a general proposition, no one would doubt that parents are under an obligation to support their minor children. This duty rests on fundamental natural laws and has always been recognized by the courts in the absence of any statute declaring it."

■ Larry on appeal does not dispute that Troy's right to support cannot be abridged by his parents. However, Larry contends, under the authority of *Kaminski* v. *Kaminski* (1970) 8 Cal.App.3d 563 [87 Cal.Rptr. 453] and *Hunter* v. *Hunter* (1959) 170 Cal.App.2d 576 [339 P.2d 247], that while the 1979 agreement did not bind Troy, it did bind Larry and Patricia. Larry argues that between him and Patricia the agreement is a valid contract of indemnity to save him free from liability for the support of Troy. He proposes the contract should be carried out by (1) evaluating Patricia's ability to presently make indemnity payments, (2) allowing unpaid indemnity to accrue until Patricia's circumstances improve and (3) that all unpaid indemnity come due when Troy reaches his majority. In other words, Larry proposes a creditor/debtor relationship between him and Patricia regarding Troy's child support.

In *Hunter, supra,* 170 Cal.App.2d 576, the husband was ordered to pay $120 per month for the support of two minor children in a default divorce judgment. Apparently dissatisfied with California's one-year delay before the final decree, the wife instituted divorce proceedings in Nevada, where she executed a document that "released and relinquished" for one year her claim to child support. Thereafter she obtained a writ of execution on the California judgment for the one-year period. A successful motion to quash the writ was made, and the wife appealed. The appellate court in *Hunter* affirmed, saying the wife was "attempting on her account"—as opposed to acting on the children's behalf—and was seeking reimbursement for funds she had already expended. The *Hunter* court concluded: "The parents by their agreement subsequent to the interlocutory decree could not have limited or abridged the rights of the children, but between themselves the agreement was binding." (*Id.* at p. 583.)

We find *Hunter* distinguishable from the instant case because it clearly involved a claim for reimbursement by the wife. Here, Patricia is not seeking arrearages for the five-year period; she is seeking support payments to resume because of Troy's present needs.

In *Kaminski, supra,* 8 Cal.App.3d 563, husband and wife married in California and wife obtained a default judgment of divorce in Wisconsin, which

provided the husband pay $10 per week in child support and have reasonable visitation rights. When the husband tried to contact their son by telephone, the wife told him: " 'As far as you're concerned, you're dead. He has no father and he thinks you're dead. Let's leave it that way.' " The father insisted the son come to the phone and when he did, he told the father: " 'Hello, I don't want to talk to you.' " The wife came back on the line and said: " 'See? Now, just stay out of my life and leave me alone. I don't want anything from you at all.' " (*Id.* at p. 565.) The wife remarried and the second husband adopted the son. The following year the wife sued the first husband to enforce collection of child support and alimony. The court found that the wife had waived any claim for money under the divorce payment when she said, "I don't want anything from you at all," and was therefore estopped from seeking collection.

*Kaminski* is inapposite to the instant case, which does not involve waiver issues.

We find the case of *Avila* v. *Leonardo* (1942) 53 Cal.App.2d 602 [128 P.2d 43] more on point and the principles therein espoused controlling. In *Avila*, husband and wife upon separation entered into an agreement whereby the father would pay monthly support for two children in the mother's custody. The separation agreement provided that if the mother remarried she would thereafter support the two children at her own expense and hold the father harmless from his support obligation. When the couple divorced, the court approved and confirmed the agreement, but did not make it part of the interlocutory decree. After the mother remarried, the father stopped paying child support and the mother instituted execution proceedings to recover the arrearage. The father sued to enjoin the sheriff from giving the wife the money levied upon the execution.

The *Avila* trial court ruled that in executing the agreement the wife did not forfeit the claim of the minor children for support and held the hold-harmless provision was not an offset against the amount due her under the divorce decree. The appellate court in *Avila* affirmed, rejecting the husband's argument that the hold-harmless provision created an offset that would not affect the right of the children for support. The appellate court called the husband's argument "specious but unsound." (*Avila* v. *Leonardo, supra,* 53 Cal.App.2d 602, 608.) The court added: "If [husband] can set off the assumed liability of the wife against the installments now accrued he can defeat the collection of all future installments by the simple expedient of refusing payment as they became due, and, offsetting the assumed liability of the wife thereafter as he seeks to do here. Such an evasion of the law and the orders of the court cannot be countenanced." (*Ibid.*)

In response to *Avila,* Larry insists in his appellate brief that he does not seek an offset, but rather indemnification from Patricia. He cites cases dealing with the inability of creditors to exercise a right of setoff and notes that none of these cases hold the underlying debt was invalid. But under the circumstances of this case, Larry is drawing a distinction without a difference between setoff and indemnification.

First of all, the parental obligation to pay child support is not an ordinary debt; it is a court-imposed obligation to provide for one's child. (*Williams v. Williams* (1970) 8 Cal.App.3d 636, 639 [87 Cal.Rptr. 754]; see also *Keck v. Keck* (1933) 219 Cal. 316 [26 P.2d 300], which discusses the obligation to pay alimony.) Second, to uphold Larry's contention would mean that the broad powers of the courts regarding the support of minor children could be thwarted by the subterfuge of an indemnity provision in a contract between the parties. Third, under such a provision a parent could find himself or herself allocating resources for indemnification that would otherwise be used to support the child, thereby harming the child's welfare. In sum, the 1979 agreement fails on public policy grounds.

This state has long espoused a policy that the welfare of children is of upmost importance. ■ "In any proceedings involving custody and support it is axiomatic that the 'court should always adopt the course that is for the best interests of the child.' " (*Evans* v. *Evans* (1960) 185 Cal.App.2d 566, 572 [8 Cal.Rptr. 412].) Recently, the court in *In re Marriage of Goodarzirad* (1986) 185 Cal.App.3d 1020 [230 Cal.Rptr. 203](a case involving a postdissolution stipulation similar to Larry and Patricia's 1979 agreement) observed: "The entire scheme underlying custody decrees is that primary consideration must be given to the welfare of the child. [Citation.] The ultimate aim of the court is to serve the best interests and welfare of the minor child. [Citation.]" (*Id.* at p. 1028.) We, of course, are not unmindful of the solemnity and obligation of contracts. However, it is clear the rights of the contracting parties under agreements such as this one affecting children must yield to the welfare of the children.

■ We conclude the 1979 agreement was an attempt to completely obviate the clear and strong policy of this state that a parent must support his children. It follows as a corollary that children can receive support only from parents who have the resources to provide it. Agreements such as the one in the instant case fail because they necessarily contemplate the parent who assumes the entire support obligation will remain solvent throughout the child's minority—something for which there is usually no guaranty. ■■■■■ Based on these overriding public policy reasons, such

agreements between parents seeking to relieve one parent of his or her obligation of child support are void.[6]

We are not without sympathy for Larry's situation. Here, he entered into a contract in which both sides enjoyed the advice of counsel and the contract was ratified by a superior court judge, who made it part of a court order. Further, for more than five years he was led to believe that this court order, which in effect provided that the mother alone was responsible for child support, was valid. Now, with our decision, he finds himself obliged to provide support for Troy until he reaches majority.

We do, however, want to make clear that we are not suggesting Patricia is entitled to the child support from 1979 to 1985 or that that period of time is ripe for further claims. Patricia in instituting the instant action did not seek any such arrearages, making that issue beyond the scope of this case. We note that if she did pursue such a claim in a later proceeding, the issues of waiver and estoppel would undoubtedly have to be addressed.

 Finally, we address the issue of attorney's fees. The trial court bifurcated this proceeding: first deciding the issue of child support; and then ruling on the validity of the 1979 agreement. The trial court awarded Patricia $750 in attorney's fees for the child support proceeding, but declined to award fees for the proceeding involving contract interpretation. The trial court viewed the latter proceeding as separate from the first, and consequently found itself unauthorized to award attorney's fees under section 4370. Section 4370 provides in part that: "In respect to services rendered or costs incurred after the entry of judgment, the court may award such costs and attorneys' fees as may be reasonably necessary to maintain or defend any subsequent proceeding . . . ." The purpose of the award of fees under section 4370 is to provide one of the parties, if necessary, with an amount adequate to properly litigate the controversy. (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768 [209 Cal.Rptr. 354, 691 P.2d 1020].) Rather than being separate, the interpretation of the 1979 agreement was intimately related to the child support issue. In fact, it was determinative of whether Troy received support. It clearly was a proceeding that is covered by section 4370. Hence, the trial court did have authority under section 4370 to award attorney's fees for the second part of the proceeding.

---

[6] Although the statutory time period to attack the 1979 order by direct appeal has long since passed, a court order void on its face is always subject to being declared a nullity. The stipulated order adopting the parties' agreement in 1979 was such an order "and may be set aside directly or collaterally." (*Vasquez* v. *Vasquez* (1952) 109 Cal.App.2d 280, 283 [240 P.2d 319].)

DISPOSITION

The judgment filed November 6, 1985, declaring valid the hold-harmless ' provision in the order of November 28, 1979, and denying Patricia's petition for attorney fees is reversed. The case is remanded to the trial court for further proceedings concerning the allowance of attorney fees for the trial below and this appeal. Patricia is awarded costs on appeal.

Butler, Acting P. J., and Lewis, J., concurred.