Filed 6/13/14  In re Marriage of Boyd CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of ELIZABETH A. BOYD and BRADLEY A. BOYD. | D064281 |
| ELIZABETH A. BOYD, | |
| Appellant, | (Super. Ct. No. D473583) |
| v. | |
| BRADLEY A. BOYD, | |
| Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Susan D. Huguenor, Judge.  Affirmed.

Stephen M. Bishop for the Appellant.

Hargreaves & Taylor and Elizabeth Anne Kreitzer; Stanwood C. Johnson for the Respondent.

Appellant Elizabeth Boyd appeals from a judgment awarding her former husband, respondent Bradley Boyd, $28,502.50 in principal and interest plus $2,500 in attorney fees, on Bradley's[1] claim for indemnification arising from their respective obligations on a loan and mutual releases in their marital settlement agreement (settlement agreement). Elizabeth contends the judgment should be reversed because (1) Bradley did not meet a condition precedent to invoke the hold harmless provision in the settlement agreement; (2) the family court erred by awarding Bradley more than the amount of actual loss or damage he incurred; (3) the court erred by awarding Bradley attorney fees because he did not incur them in good faith; and (4) Bradley breached his fiduciary duty to Elizabeth under the settlement agreement. We conclude Elizabeth forfeited the latter two arguments by failing to raise them in the family court, and her other contentions, which we independently address as questions of law, lack merit. Accordingly, we affirm the judgment.

---

[1]    As is customary in family law cases, we refer to the parties and other family members by their first names for clarity, and not out of disrespect. (See *Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 828, fn. 2.)

FACTUAL AND PROCEDURAL BACKGROUND[2]

Bradley and Elizabeth were married in 1989. In March 2003, Bradley and Elizabeth obtained a judgment of dissolution of their marriage, which incorporated the settlement agreement. Under the settlement agreement, Bradley and Elizabeth each assumed one half of a $47,500 loan owed to Bradley's mother, Joyce Boyd, and agreed to "pay, assume, and hold [the other] free and harmless from" that obligation, as well as defend and indemnify the other against "any claim, action or proceeding . . . brought seeking to hold [the other] liable for any of [his or her] debts, liabilities, acts or omissions . . . ."

Several sections of the settlement agreement contain indemnity language. The "Community Property" section of the settlement agreement states in part: "Wife shall pay, assume, and hold Husband free and harmless from all obligations listed in Exhibit 'B[,]' " which included Elizabeth's loan obligation to Joyce. A "Mutual Releases" section contains defense and indemnity provisions, which states with regard to Elizabeth: "Wife

---

[2]    We set out the facts from the original and augmented clerk's transcript, viewing the evidence favorably to Bradley as the prevailing party. "[T]he applicable standards of appellate review of a judgment based on affidavits or declarations are the same as for a judgment following oral testimony: We must accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence." (*Betz v. Pankow* (1993) 16 Cal.App.4th 919, 923.) This court gave Elizabeth's counsel an opportunity to cure defects in Elizabeth's opening brief by filing an augmented brief. However, with the exception of one cite to the clerk's transcript regarding the amount of Bradley's actual payments on the debt at issue, Elizabeth's augmented brief contains no record citations for its factual summary, and appears substantively identical to her original brief. We are entitled to disregard contentions not supported by citations to the record on appeal. (*In re S.C.* (2006) 138 Cal.App.4th 396, 406-407.)

3

covenants, except as may be expressly provided otherwise in this Agreement, that if any claim, action or proceeding shall hereafter be brought seeking to hold Husband liable for any of her debts, liabilities, acts or omissions, she shall, at her sole expense, defend him against any such claim or demand (whether or not well founded) and that she shall indemnify him and hold him free and harmless from all costs, expenses and liabilities in connection therewith."  Another clause entitled "Hold Harmless Provisions" reads in part: "In the event a party to this Agreement is required to pay and hold the other party harmless from some debt, and the party fails to hold the other party harmless from the debt, then the other party may pay some or all of the debt and deduct the payment from any monies owed by the other party to the party who breached this covenant to hold the other party harmless."  The hold harmless clause prohibits a party from paying a debt without giving written notice to the other party, and requires that the party giving such notice wait seven days from the date of notice before paying any debt.  The settlement agreement also contains a clause entitling the prevailing party to recover reasonable attorney fees in an action to enforce any of the settlement agreement's provisions.

In 2006, Elizabeth filed for Chapter 7 bankruptcy protection, listing Joyce as a creditor.  A few months later, an attorney representing Bradley informed Elizabeth's bankruptcy counsel that Joyce had made a demand on Bradley for repayment of the entire obligation as a result of the bankruptcy filing, and that Bradley's indemnification claim

was not dischargeable under section 523(a)(15) of title 11 of the United States Code.[3] In January 2007, Elizabeth's obligation to Joyce in the amount of $32,118 was discharged. However, Elizabeth through counsel advised Joyce that she intended to fulfill her obligation notwithstanding the fact she listed the unsecured debt on her bankruptcy schedules. Elizabeth sent Joyce four payments amounting to $650, but stopped making payments in March 2008.

Joyce sued Bradley to collect on the debt, and in September 2011, the superior court entered a $24,785.50 judgment by default against Bradley in that action. Thereafter, Bradley unsuccessfully communicated with Elizabeth to resolve the matter of her agreement in their judgment of dissolution to indemnify him on their debts.

In April 2013, Bradley sought an order in the family court to enforce the settlement agreement's indemnity provision, modify spousal support, and recover his attorney fees and costs. He asked the court to order Elizabeth to pay him $24,785.50 in principal and $3,511.28 in interest that had accrued through February 28, 2013, monthly interest of $206.55 from March 1, 2013, and his attorney fees and costs.

---

[3] The December 2006 letter from attorney Radmilla Fulton pointed to the settlement agreement's defense and indemnity language and the hold harmless provision. Fulton wrote: "Please accept this letter as notice pursuant to the provisions of the Marital Settlement Agreement that Mr. Boyd makes a demand that your client hold him harmless and indemnify him against the claim of Joyce Boyd. Further, pursuant to the provisions of the Marital Settlement Agreement, this letter is intended to give your client notice that Mr. Boyd intends to pay Joyce Boyd by offsetting the past due support due to your client, again, pursuant to the terms of the Marital Settlement Agreement. My understanding is that the payments on the past due support in the amount of $350 per month would not commence to your client until about February 1, 2007, when Mr. Boyd completes payments to her dissolution counsel. Thus, this offset will not take place until the automatic stay has been dissolved and this bankruptcy completed."

In response, Elizabeth submitted a declaration asserting that Joyce had been notified about her bankruptcy and had an opportunity to, but did not, challenge the discharge. Pointing out Joyce had not pursued Bradley for the debt until more than four and a half years after the debt was discharged in bankruptcy, Elizabeth stated that Joyce had "no legal right" to sue Bradley for any portion of Elizabeth's debt because there was no longer a valid debt.

Bradley replied in a sworn declaration that he and Elizabeth were jointly and severally liable for the debt to his mother, and Elizabeth's discharge did not absolve him of paying the debt in its entirety. He pointed out Elizabeth had promised his mother that she would make payments on the debt, and did make partial payments, resulting in his mother's inaction. He stated he had incurred $1,842.50 in attorney fees, and anticipated another three hours of his attorney's time on the matter. He asked the court to order Elizabeth to contribute $2,500 toward his attorney fees for her refusal to follow the judgment.

The family court heard arguments on the matter, including from Elizabeth, who represented herself. She argued the same points raised in her declaration: that her bankruptcy discharged the debt to Joyce, who was on notice of the bankruptcy proceeding but did not contest it, and who waited over four and a half years to file an action to collect on the debt. Elizabeth argued a debtor could make voluntary payments on the debt even after discharge, and she did so to Joyce because Joyce was a close family member. She asked that Bradley pay his own attorney fees "because this matter was pursued on his own volition."

6

The family court ordered that judgment be entered in Bradley's favor in the total amount of $28,502.50, consisting of $24,785.50 in principal plus $3,717 in interest. It ordered Elizabeth to contribute $2,500 toward Bradley's attorney fees. It set spousal support to zero effective March 1, 2013.

Elizabeth filed this appeal from the April 23, 2013 judgment.

DISCUSSION

I. *Elizabeth's Argument as to the Hold Harmless Provision of the Settlement Agreement*

Elizabeth contends that the judgment based on indemnification was improper because under the circumstances, Bradley never satisfied a condition precedent to invoke the hold harmless provision of the settlement agreement. Specifically, she maintains Bradley was prohibited from paying any debt without first giving her notice and waiting seven days to allow her to assert a legal defense. She also argues that "public policy and existing case law" prohibited Bradley from withholding child support to satisfy her portion of the debt, as his attorney had proposed in her December 2006 demand letter. Bradley initially responds by asserting Elizabeth has forfeited her contentions by failing to raise these arguments in the trial court, and by relying on new theories.

We cannot agree, however, that Elizabeth has forfeited her argument concerning the condition precedent of notice and the waiting period. Concededly, "[a]s a general rule, theories not raised in the trial court cannot be raised for the first time on appeal. This is a matter of fundamental fairness to both the trial court and opposing parties." (*City of Scotts Valley v. County of Santa Cruz* (2011) 201 Cal.App.4th 1, 28.) But "[t]here are exceptions to this rule, including where a new theory pertains only to

7

questions of law based on undisputed facts. [Citation.] . . . [E]ven then, whether an appellate court will entertain a new theory raised for the first time on appeal is strictly a matter of discretion. [Citation.] Moreover, where a new theory contemplates a factual situation that is ' "open to controversy" ' and was not placed at issue in the trial court, it cannot be advocated on appeal. [Citation.] Likewise, when a party bears some responsibility for the claimed error, they are generally estopped from taking a different position on appeal or are deemed to have waived the error." (*Id.* at pp. 28-29; see also *Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1141.)

Here, the facts are not in dispute, and because the parties did not present conflicting evidence of their intent as to the scope and nature of the release or hold harmless language, interpretation of the settlement agreement is a matter of law. (*City of Hope Nat. Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395; *Salehi v. Surfside III Condominium Owners' Assn.* (2011) 200 Cal.App.4th 1146, 1159; see *ASP Properties Group v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1267 [where extrinsic evidence is not in conflict, construction of an agreement is a question of law for reviewing court's independent review].) Elizabeth's argument—that a condition precedent to the hold harmless clause was not satisfied by Bradley's failure to give notice of his intention to pay on the debt—does not depend on a factual situation that is open to controversy.

Interpreting the settlement agreement independently on the facts presented, we conclude Elizabeth's arguments lack merit. As Bradley correctly points out, there were several indemnity provisions in the settlement agreement, not merely the hold harmless

8

provision requiring notice and a waiting period. He argues he relied on the express indemnity and defense provisions in the "Community Property" and "Mutual Releases" sections, neither of which required notice to Elizabeth. But even assuming the "Hold Harmless Provision" clause's notice and waiting period requirement encompassed *all* of the defense and indemnity provisions in the settlement agreement, the record shows Bradley gave Elizabeth notice of his intent to pay Joyce's debt in December 2006.

Elizabeth further argues that, as a matter of public policy, Bradley's December 2006 notification did not trigger the hold harmless clause, because he proposed at the time to offset his past due support owed to Elizabeth. She relies on authorities assertedly holding that a premarital agreement or marital settlement agreement may not abridge statutory child support obligations. We have no quarrel with the proposition that a child's right to support cannot be abridged by his or her parents, and a waiver of a child support obligation by either parent is void or unenforceable. (See *County of Orange v. Smith* (2002) 96 Cal.App.4th 955, 962; *In re Marriage of Crosby & Grooms* (2004) 116 Cal.App.4th 201, 210 [clause in marital settlement agreement held unenforceable as it required application of Idaho law serving to limit father's child support obligation]; *In re Marriage of Ayo* (1987) 190 Cal.App.3d 442, 448-449; *Avila v. Leonardo* (1942) 53 Cal.App.2d 602, 608.) In *Avila v. Leonardo*, for example, the appellate court affirmed a family court's ruling that a wife's agreement upon remarriage to hold husband harmless from his child support obligation did not forfeit the minor children's right to support, and her remarriage did not terminate father's obligation to pay court ordered child support payments. (*Avila*, 53 Cal.App.2d at pp. 606-608.) The problem with Elizabeth's

9

argument, however, is that there is no evidence in the record that Bradley actually withheld past support due to Elizabeth in satisfaction of Joyce's debt under the settlement agreement's hold harmless provision.  But we need not address the matter because it is a factual question whether Bradley in fact used the hold harmless provision in the settlement agreement to offset past due support so as to render that provision unenforceable, and Elizabeth's failure to raise it in the trial court forfeited it.  (*City of Scotts Valley v. County of Santa Cruz*, *supra*, 201 Cal.App.4th at pp. 28-29; *City of San Diego v. Rider* (1996) 47 Cal.App.4th 1473, 1493.)

II. *Elizabeth's Challenge to the Judgment on Grounds it Awards More Than Bradley's*

*Loss or Damage*

Elizabeth next contends the trial court erred in awarding Bradley the entire amount of the debt plus interest because the evidence showed he had only so far paid $3,080 on the debt owed to Joyce.  She maintains that under Civil Code section 2778, subdivision (2),[4] an obligation to protect an indemnitee from a loss accrues only when the indemnitee

---

4      Civil Code section 2778 provides:  "In the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears: [¶] 1. Upon an indemnity against liability, expressly, or in other equivalent terms, the person indemnified is entitled to recover upon becoming liable; [¶] 2. Upon an indemnity against claims, or demands, or damages, or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof; [¶] 3. An indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion; [¶] 4. The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defenses, if he chooses to do so; [¶] 5. If, after request, the person indemnifying neglects to defend the person indemnified, a recovery

pays a legal obligation; that recovery under an indemnity agreement is measured by the amount of *actual loss* sustained by the indemnitee, and Bradley's actual loss was only the amount he had already paid Joyce. She argues that the terms of the settlement agreement required one party or the other to pay some or all of the debt.

Resolution of Elizabeth's contention requires us to decide whether the settlement agreement contains provisions for indemnity against loss or damage, or indemnity against liability, or both. (See *Alberts v. American Cas. Co. of Reading, Pa.* (1948) 88 Cal.App.2d 891, 898.) In *Alberts*, the court explained: "There are two classes of contracts of indemnity. In one class the indemnitor engages to save the indemnitee from loss, meaning actual loss. In the other class the indemnitor engages to save the indemnitee from liability. In the first class the indemnitee must prove loss actually suffered by him. In a case of a loss by the indemnitee of money held as bailee the indemnitor's liability for the loss does not arise until the debt has been paid and the indemnitee has thus suffered a loss. [Citations.] In the second class the indemnitee need not prove actual loss but only that he has become liable. The indemnitee may, without having paid anything, recover from the indemnitor as soon as liability is legally imposed. [Citations.] [¶] The same instrument may indemnify against actual loss and against

against the latter suffered by him in good faith, is conclusive in his favor against the former; [¶] 6. If the person indemnifying, whether he is a principal or a surety in the agreement, has not reasonable notice of the action or proceeding against the person indemnified, or is not allowed to control its defense, judgment against the latter is only presumptive evidence against the former; [¶] 7. A stipulation that a judgment against the person indemnified shall be conclusive upon the person indemnifying, is inapplicable if he had a good defense upon the merits, which by want of ordinary care he failed to establish in the action."

11

liability. [Citations.] Liability is established upon the rendition of a judgment against the indemnitee with respect to the thing indemnified although the judgment remains unpaid. [Citations.] The form which the litigation takes is of no importance so long as the liability of the indemnitee is established. . . . [T]he undertaking of the indemnitor may not be extended by construction or implication beyond the terms of the contract." (*Alberts*, at pp. 898-899.)

Thus, in *Alberts*, the appellate court held that language in a contract indemnifying plaintiffs " 'against any loss of money . . . belonging to the Insured, or in which the Insured had a pecuniary interest, or for which the Insured is legally liable, or held by the Insured in any capacity whether the Insured is legally liable therefor or not, which the insured shall sustain' " was an agreement to indemnify against liability as well as actual loss. (*Alberts v. American Cas. Co. of Reading, Pa.*, *supra*, 88 Cal.App.2d at pp. 898, 900.) The court explained that because the contract was one against liability, the defendant became liable to the plaintiffs for a third party's loss of money upon a determination of the plaintiff's liability to the third party by a judgment. (*Id*. at pp. 900-901; see also *Showers v. Wadsworth* (1889) 81 Cal. 270, 273-274 [judgment in favor of sheriff on contract indemnifying sheriff against liability upheld where sheriff's liability to claimants was "conclusively established" by judgments; the court rejected the defendant's claim that no liability was incurred by the sheriff]; *Moore v. Sleeper* (1894) 102 Cal. 277, 279.)

"Courts interpret contractual indemnity provisions under the same rules governing other contracts, with a view to determining the actual intent of the parties." (*Maryland*

*Casualty Co. v. Bailey & Sons, Inc.* (1995) 35 Cal.App.4th 856, 864; see also *Gribaldo, Jacobs, Jones & Associates v. Agrippina Versicherunges A.G.* (1970) 3 Cal.3d 434, 442; *Wilshire–Doheny Associates, Ltd. v. Shapiro* (2000) 83 Cal.App.4th 1380, 1396 [indemnity agreements are " 'interpreted according to the language and contents of the contract as well as the intention of the parties as indicated by the contract. [Citation.] The extent of the duty to indemnify is determined from the contract' "].) Moreover, "the provisions of [Civil Code] section 2778, prescribing the rules for interpreting indemnity agreements, are as much a part of such instrument as those set out therein, unless a contrary intention appears." (*Gribaldo*, 3 Cal.3d at p. 442.) In the absence of extrinsic evidence, the interpretation of the contract in light of the statute is a question of law. (*Id.* at p. 445; see *United States Elevator Corp. v. Pacific Investment Co.* (1994) 30 Cal.App.4th 122, 125.)

Here, the settlement agreement requires Elizabeth to "indemnify [Bradley] and hold him free and harmless from all costs, expenses *and liabilities* in connection [with]" any "claim, action or proceeding . . . seeking to hold Husband liable for any of her debts . . . ." (Italics added.) The clause explicitly provides for defense and indemnity against *both* liabilities and actual loss. Thus, it falls under Civil Code section 2778, subdivision (1), entitling Bradley to "recover upon becoming liable," not subdivision (2), as Elizabeth contends. (See footnote 4, *ante*.) As a consequence, Bradley's payment of the judgment to Joyce was not required prior to his seeking indemnification. (Accord, *CC-California Plaza Associates v. Paller & Goldstein* (1996) 51 Cal.App.4th 1042, 1054 [provision reading in part that subcontractor " 'shall indemnify, defend and save harmless

13

Contractor from and against any and all claims, debts, demands, damages . . . judgments, awards, losses, liabilities, interest, attorneys' fees, costs and expenses of whatsoever kind or nature at any time arising out of any failure of Subcontractor to perform any of the terms and conditions of this subcontract' " indemnified against both liability and claims, thus the provision "properly falls under Civil Code section 2778, subdivision (1) [and] as a consequence, 'payment' was not required prior to seeking indemnification"].)

### III. *Attorney Fees and Costs Award*

Elizabeth contends the family court erred by ordering her to contribute $2,500 toward Bradley's attorney fees and costs. Citing Civil Code section 2778, subdivision (4), she maintains an indemnitor is only liable for the indemnitee's costs incurred in good faith and in the exercise of reasonable discretion, and here, the evidence did not show Bradley's attorney fees and costs were incurred in good faith or "necessary to an effectual defense." She further argues that Bradley's attorney fees and costs were not incurred in defending the underlying lawsuit against Joyce, which would have entitled him to fees and costs under the settlement agreement.

Elizabeth's challenge is not cognizable on appeal because "good faith and reasonableness are questions of fact." (*Peak-Las Positas Partners v. Bollag* (2009) 172 Cal.App.4th 101, 106.) In the family court, Elizabeth did not mention Civil Code section 2778; she merely argued that Bradley was not entitled to fees and costs because he pursued the matter "of [his] own volition." Having failed to raise below the issue of Bradley's good faith or reasonableness in seeking attorney fees, she cannot do so for the

14

first time here.  (*City of Scotts Valley v. County of Santa Cruz, supra*, 201 Cal.App.4th at pp. 28-29.)

We note that on the merits, Elizabeth's arguments do not establish error.  It is her burden to show the family court abused its broad discretion in awarding Bradley attorney fees and costs—i.e., that no judge could reasonably make the award she challenges.  (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768-769; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)  She misconstrues Bradley's declaration stating the attorney fees he had incurred were "for the filing of this motion," and also ignores the plain language of the settlement agreement.  The attorney fees clause in the settlement agreement provides:  "<u>ENFORCEMENT OF TERMS OF AGREEMENT—FEES AND COSTS</u>  [¶]  Should it be necessary for either party to bring an action in this or any other court *for the enforcement of any of the provisions of this Agreement*, the prevailing party shall be entitled to an award from the other party of his or her reasonable attorney fees and costs incurred in the action, irrespective of either party's need or ability to pay at the time of such hearing, and irrespective of any fee provision of the Family Code of the State of California."  Bradley's motion was directed at enforcing Elizabeth's obligation to indemnify him for her debts under the settlement agreement, which permitted the prevailing party to recover attorney fees and costs.  Elizabeth does not propose any other interpretation of the attorney fee provision of the settlement agreement, or convince us that the family court erred in making the attorney fees and costs award.

15

IV. *Claim of Breach of Fiduciary Duty*

Elizabeth contends Bradley breached his fiduciary duty owed to her under the settlement agreement, including to make full disclosure of material facts and information regarding the existence, characterization and valuation of all assets in which the community has interest and debts for which it may be liable. She points out Bradley was aware of her plan to file bankruptcy, as was Joyce, and asserts, "In effect, Bradley was in collusion with Joyce when he sued Elizabeth in Family Court to pay on the debt she owed to Joyce. This was done despite the fact Elizabeth's legal obligation to Joyce had been discharged in Bankruptcy Court." Elizabeth further argues the evidence confirms Bradley intentionally defaulted when he was sued by Joyce to collect on the loan; that he "used the Family Court to circumvent Elizabeth's bankruptcy discharge" and "breached his fiduciary obligation to Elizabeth by failing to defend against Joyce's lawsuit."

Though the existence of a fiduciary duty is a question of law, breach of the duty is a question of fact. (*Kirschner Brothers Oil, Inc. v. Natomas Co.* (1986) 185 Cal.App.3d 784, 790; see also *Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 32.) Elizabeth did not make her collusion arguments and raise issues as to Bradley's good faith or intent in the family court. Thus, such fact-based arguments as to Bradley's breach of fiduciary duty are not properly raised for the first time on appeal. (*City of Scotts Valley v. County of Santa Cruz*, *supra*, 201 Cal.App.4th at pp. 28-29; see also *Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 818, fn. 36; *City of San Diego v. Rider*, *supra*, 47 Cal.App.4th at p. 1493.) We conclude Elizabeth has forfeited these points.

16

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McINTYRE, J.