[Civ. No. 28516. Second Dist., Div. Two. Sept. 15, 1964.]

ANNA DORA K. POTTS, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; BILLY JUNIOR POTTS, Real Party in Interest.

Max Fink for Petitioner.

No appearance for Respondent.

Pray, Price, Williams & Deatherage and Dale B. Deatherage for Real Party in Interest.

ROTH, J.—Petitioner, Anna Dora K. Potts, seeks a writ of mandate directing the Superior Court of Los Angeles County to set aside its order quashing a writ of execution (dated April 21, 1964).

On January 6, 1959, petitioner secured a final decree of divorce from Billy J. Potts, the real party in interest herein. Incorporated in this decree was a written separation agree-

ment which provided, *inter alia*, "that Plaintiff have custody of the one minor child, . . . Defendant shall pay to Plaintiff the sum of $250.00 per month for the support, maintenance and education of said child during her minority, . . ."

On March 17, 1964, in department 8 of respondent court, the court heard orders to show cause *re* modification of the decree and *re* contempt. Potts contended during this hearing that petitioner had agreed by an extrajudicial oral agreement in September, 1959, to reduce the monthly support payments to $175, and in his answer to the present petition states that he paid petitioner $175 monthly after the 1959 agreement.

In a minute order dated March 18, 1964, the trial court ordered that petitioner's motion *re* contempt be dismissed on the ground sthat the court could not find the element of wilfulness and on the basis that the parties had entered into an oral agreement to reduce the amount of the monthly payments. The court also denied petitioner's motion to modify the divorce decree. However, on June 17, 1964, the trial court entered a *nunc pro tunc* order to correct its order of March 18, to reflect its decision from the bench that the child support payments be modified, pursuant to Pott's motion, to $175 per month, commencing on April 15, 1964.

On April 21, 1964, petitioner caused a writ of execution (which is the subject of this petition) to be issued for the amount of the accumulated deficiency in the child support payments at the rate of $75 per month between September 1959 and April 1964. Pursuant to such writ, petitioner levied upon certain real and personal property owned by Potts.

On May 14, 1964, Potts moved to quash the writ of execution on the grounds that there was no unsatisfied judgment on which the execution could be issued; and that the parties had entered into an oral agreement satisfying any existing judgment. This motion was granted by respondent court on June 17, 1964.

The question raised by the petition herein is whether the oral agreement between the petitioner and her ex-husband brings this case within the doctrine enunciated in *Colby* v. *Colby*, 127 Cal.App.2d 602 [274 P.2d 417], and *Hunter* v. *Hunter*, 170 Cal.App.2d 576 [339 P.2d 247], to the effect that upon proof of an agreement between the parents by which the judgment debtor's obligation was satisfied, the trial court may quash the writ of execution which issued as a matter of right.

Petitioner contends, as was contended in *Hunter* v. *Hunter*,

*supra,* that any agreement between the parents that purports to limit or abridge the judicially decreed support rights of the children is null and void since the parents cannot extra-judicially bargain away the rights of the children. In *Hunter, supra,* it was held: "A child's right to support cannot be barred by a property settlement agreement between the parents. . . . Upon an application for an award of child support, the trial court may order the father to pay notwithstanding the existence of an agreement by which the mother purported to release the father from all liability for support of their children. [Citation.] In such an application the mother is enforcing the children's right to support—a right which cannot be limited or abridged by the agreement of the parents. . . .

"However, these settled principles have no application where, as in the instant case, the mother is attempting *on her own account* to execute on an order for support contained in a judgment of divorce.

"[T]he recognized power of the court to protect the interests of the children does not automatically relieve plaintiff of the obligations into which she has entered. Under the terms of Civil Code, section 196, plaintiff, having custody of the children, was under a duty to support them. The effect of the support order was to reimburse plaintiff for the funds which she would expend in caring for the children. [Citations.] And in attempting to execute on the order '. . . she is seeking, not funds for the current support of the children, but reimbursement for funds she has already expended for their support.' (*Di Corpo* v. *Di Corpo, supra,* 33 Cal.2d 195 200 [200 P.2d 529].)

"The parents by their agreement subsequent to the interlocutory decree could not have limited or abridged the rights of the children, but between themselves the agreement was binding. [Citations.]"

The question arises, therefore, whether the trial court abused its discretion in quashing the writ of execution. If there is substantial evidence upon which the court could find that the oral agreement satisfied the obligation of the judgment debtor, such a claim is unmeritorious. (*Colby* v. *Colby,* 127 Cal.App.2d 602, 605 [274 P.2d 417].)

Potts, called as a witness in his own behalf, testified that in a conversation with his wife in 1959, he "asked her if she would lower the payments to $175 since we had talked about it originally. . . . [A]nd she agreed that I could lower it

for awhile." On cross-examination Potts was asked: ". . . Isn't it true that you called your wife and told her that you were very hard up and had no money and you wanted to know if you could owe her the difference between $175 and $250 a month for awhile?

"A. No, sir, I didn't say I would owe it.

"Q. Didn't she say to you at that time that 'You can make it up to me later'? A. No, sir."

Potts' deposition, introduced by way of impeachment, also showed that Potts asked petitioner to lower the payments for a while and that she agreed to try it for awhile.

Petitioner, on the other hand, testified that Potts told her that he was broke in 1959, and that he wanted to lower the payments. But that "I only said with him that we would let the payments slide by until he was financially on his feet again and could continue the $250, and would make up the arrears which he felt would be in a couple of [sic] three months."

Petitioner testified further, however, that she let the question of the deficiencies ride from September 1959 until the spring of 1963.

█ The testimony detailed above clearly created a conflict in the evidence as to the exact terms of the oral agreement. It was within the province of the trial judge to resolve such conflict. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].) █ The court made an implied finding founded upon substantial evidence as it had a right to do (*Colby* v. *Colby, supra*) that there was an oral agreement, and the payments made were accepted in satisfaction thereof. We cannot say as a matter of law that the trial court abused its discretion by resolving the conflict against petitioner.

The writ is discharged.

Fox, P. J., and Ashburn, J.,* concurred.

---

*Retired Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.