Filed 8/12/21  Villas at Corte Bella v. WestPark Corte Bella Community Assn. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

|  |  |
|---|---|
| THE VILLAS AT CORTE BELLA, |  |
| Cross-complainant and Appellant, | G059577 |
| v. | (Super. Ct. No. 30-2018-01000679) |
| WESTPARK CORTE BELLA COMMUNITY ASSOCIATION, | O P I N I O N |
| Cross-defendant and Respondent. |  |

Appeal from a postjudgment order of the Superior Court of Orange County, Nancy E. Zeltzer, Judge.  Affirmed.

Irwin Leroy Schroeder for Cross-complainant and Appellant.

Callahan & Blaine, Edward Susolik and Saleem K. Erakat for Cross-defendant and Respondent.

\*          \*          \*

## INTRODUCTION

The Villas at Corte Bella (the Villas) appeals from an order granting the motion of Westpark Corte Bella Community Association (Westpark) to recall a writ of execution and quash a notice of levy. The writ of execution had been issued to enforce a judgment entered to confirm an arbitration award. The arbitration award had required Westpark, by July 3, 2014, to open an account to cover Westpark and the Villas' shared expenses, and to fund that account with $100,000 to cover the Villas' balance. The trial court found that Westpark had satisfied the judgment in June 2014 by creating that account and funding it with $100,000.

We conclude that the trial court correctly interpreted the meaning and scope of the judgment. A trial court has authority to recall and/or quash a writ of execution that was improvidently issued, and a writ of execution is improvidently issued if the judgment has been paid. Substantial evidence supports the trial court's finding that Westpark had satisfied the judgment. We therefore affirm the order.

## DEFICIENCIES IN THE APPELLANT'S OPENING BRIEF AND APPELLANT'S REPLY BRIEF

Before reciting the facts, we must first determine which parts, if any, of the Villas' briefs should be considered. Both the appellant's opening brief and the appellant's reply brief fail miserably to comply with rule 8.204(a) of the California Rules of Court (references to rules are to the California Rules of Court).

Rule 8.204(a)(1)(C) requires that any "reference to a matter in the record" must be supported by "a citation to the volume and page number of the record where the matter appears." Based on rule 8.204(a)(1)(C), Westpark requests that we strike the appellant's opening brief because it does not adequately cite to the record.

The appellant's opening brief does not comply with rule 8.204(a)(1)(C) because, while the brief has some record references, large parts of the brief, including

2

half of the statement of facts, have none. We have the discretion to disregard passages of a brief that do not comply with rule 8.204(a)(1)(C). (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 195; *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 990.) Rather than strike the entire appellant's opening brief, we shall exercise our discretion to disregard those parts of the brief that do not comply with rule 8.204(a)(1)(C).

The appellant's opening brief fails to comply with rule 8.204(a) in two other respects. First, rule 8.204(a)(2)(B) requires an appellant's opening brief to "[s]tate that the judgment appealed from is final, or explain why the order appealed from is appealable." The Villas' opening brief has a section entitled "Statement of Appealability" but it has no citation to authority and does not explain why the order granting the motion to recall the writ of execution and quash the notice of levy is appealable.[1] The statement of appealability claims "[t]he exceeding of authority/jurisdiction rendered her decision appealable" but that is not a ground for appealability identified in Code of Civil Procedure section 904.1, subdivision (a), or elsewhere.

Second, rule 8.204(a)(1)(B) requires each brief to "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority." The appellant's opening brief does not comply with this rule. The argument section of the appellant's opening brief has two subsections: One subsection has the heading "The Standard of Review, Elements of the Action" and the other has the heading "The Error of the Court." Neither heading

---

[1] An order made to enforce a judgment or to deny enforcement of a judgment is appealable under Code of Civil Procedure section 904.1, subdivision (a)(2) as an order made after an appealable judgment. (*In re Marriage of Green* (2006) 143 Cal.App.4th 1312, 1319 [order quashing writ of execution is appealable]; *Jones v. World Life Research Institute* (1976) 60 Cal.App.3d 836, 839 (*Jones*) [order denying motion to vacate and quash levy of execution is appealable].)

3

summarizes the point or points being made in the subsection. In addition, the subsection with the heading "The Error of the Court" has no citation to authority except for a general citation to the Fifth and Fourteenth Amendments to the United States Constitution. We shall exercise our discretion not to consider that subsection. (See *Winslett v. 1811 27th Avenue LLC* (2018) 26 Cal.App.5th 239, 248, fn. 6; *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179; *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114.)

The entire appellant's reply brief is in violation of rule 8.204(a)(1)(B) and (C) because the brief has only a handful of record references and is completely lacking in citation to authority. The arguments made in the appellant's reply brief are therefore forfeited, and we shall not consider them. (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418-419; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852; *Roe v. McDonald's Corp., supra*, 129 Cal.App.4th at p. 1114.) We shall not consider factual assertions made in the appellant's reply brief that are not supported by a citation to the record. (*Ragland v. U.S. Bank National Assn., supra*, 209 Cal.App.4th at p. 195.)

In addition, the appellant's reply brief makes the argument that the trial court violated the principle of judicial estoppel. That argument was not made in the appellant's opening brief and is forfeited for that reason. (*Estate of Bonzi* (2013) 216 Cal.App.4th 1085, 1106, fn. 6 ["we do not consider arguments raised for the first time in a reply brief"]; *Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 427-428 [arguments raised for the first time in the appellant's reply brief are forfeited].)

The subsection of the appellant's opening brief with the heading "The Standard of Review, Elements of the Action" does not so much as mention a standard of review. Nowhere in either of its appellate briefs does the Villas address the standard of review, which is abuse of discretion (*Potts v. Superior Court* (1964) 229 Cal.App.2d 692, 694). Although a statement of the standard of review is not a technical requirement of an

4

appellate brief, "[f]ailure to acknowledge the proper scope of review is a concession of a lack of merit." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465 (*Sonic*).) "'Arguments should be tailored according to the applicable standard of appellate review.'" (*Ibid.*) By failing to acknowledge the standard of review, tailor its arguments to that standard, and properly cite to the record, the Villas has failed to make "coherent legal argument" sufficient to meet its burden of proving error. (*Ponte v. County of Calaveras* (2017) 14 Cal.App.5th 551, 555.)

Due to the deficiencies in the appellant's opening brief and the appellant's reply brief, we could affirm, without considering the merits, on the ground the Villas has conceded its appeal lacks merit (*Sonic, supra*, 196 Cal.App.4th at p. 465) or on the ground the Villas has failed to meet its burden of demonstrating reversible error (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609). Nonetheless, we shall consider the merits—but in doing so we shall not consider any parts of the appellant's opening brief and the appellant's reply brief that do not comply with rule 8.204(a)(1)(C), the subsection of the appellant's opening brief with the heading "The Error of the Court," and the arguments made in the appellant's reply brief.

## FACTS

### I.

### The Arbitration Award

The Villas and Westpark are both homeowners associations. A dispute between them arose out of a shared facilities easement agreement whereby the Villas would contribute toward its share of expenses for shared common areas and facilities. The dispute was submitted to arbitration. The Villas and Westpark stipulated to an arbitration award, and, in June 2014, an award of arbitration signed by retired Judge James L. Smith was entered.

Relevant to this appeal are the following provisions of the arbitration award:

(1) "On or before July 3, 2014 [Westpark] will create a dedicated Shared Reserve Account funded by both [Westpark] and The Villas."

(2) "The Villas['] balance for the Shared Reserve account as of 12/31/13 will be $100,000 to be funded by [Westpark]."

(3) "[Westpark] shall have the ability to borrow from its portion of the Shared Reserve Account."

Westpark maintained its normal reserve account with Merrill Lynch (the normal reserve account). In June 2014, Westpark opened another account with Merrill Lynch (the shared reserve account) to serve as the shared reserve account required by the arbitration award. Westpark transferred $104,950 in cash from the normal reserve account to the shared reserve account to satisfy the arbitration award's requirement that Westpark fund the Villas' $100,000 balance in that account. Westpark also funded the shared reserve account with $497,791.86 in securities.

In September 2014, the Villas requested (1) confirmation that Westpark had opened the reserve account required by the arbitration and (2) copies of statements from that account for July and August 2014. Westpark provided copies of the July and August 2014 statements for the shared reserve account to the Villas. The Villas acknowledged it had received the documents requested from Westpark.

## II.

### Petition to Confirm Arbitration Award and the Judgment

In June 2018, the Villas filed a petition to confirm and enter judgment according to the arbitration award (the petition). Westpark moved to dismiss the petition on the ground of insufficient and untimely service of process.

6

The trial court denied Westpark's motion to dismiss, granted the petition, confirmed the award, and ordered entry of judgment. The court signed a single document called "Order Confirming Arbitration Award and Judgment" that contained both the order granting the Villas' petition to confirm the arbitration award and the judgment. The order portion stated the arbitration award is "confirmed in all aspects and that a Judgment be entered in conformity therewith."

The judgment portion provided that the Villas "recover the sum of $100,000, together with interest at the rate of 10% per year from July 3, 2014." The judgment further provided: "**IT IS ADJUDICATED** that the declaratory relief specified in paragraphs 2, 4 and 8 of the stipulated award will remain in perpetuity. . . . [¶] 2. On or before July 3, 2014, [Westpark] will create a dedicated Shared Reserve Account funded by both [Westpark] and The Villas."

In February 2020, an abstract of judgment reflecting a judgment of $100,000 was issued. The Villas filed a memorandum of costs after judgment for postjudgment costs and interest in the total amount of $56,242.40. A writ of execution in the amount of $156,282.40 was issued in February 2020, and a writ of execution in the amount of $158,658.92 was issued in March 2020. Also in March 2020, the writ of execution was levied on Westpark's bank, savings, and investment accounts at Bank of America and Merrill Lynch, and a notice of levy was filed.

### III.

### Motion to Recall the Writ of Execution and Quash the Notice of Levy

On March 30, 2020, Westpark filed a request for an "Emergency Civil Temporary Injunction to Recall Erroneous Writ of Execution and Quash Notice of Levy." The basis for the request was that Westpark had complied with the arbitration award and the judgment did not require Westpark to pay money directly to the Villas.

7

In April 2020, the trial court issued both a temporary restraining order staying further enforcement of the judgment and an order to show cause re: preliminary injunction (the OSC). Due to court closure precipitated by the COVID-19 pandemic, as well as a continuance, the hearing on the OSC[2] was not conducted until June 22, 2020. A minute order entered on that date states, at the outset: "The Court discloses on the record that Counsel Edward Susolik of Callahan & Blaine, APLC, and the Court have had prior social contact in connection with attendance at various bench and bar organizations, primarily the Banyard Inn of Court. The Court can remain fair. No objection by counsel."

The minute order states: "Westpark contends that it has complied with the Arbitrator's Award and has submitted the statements from July and August 2014 from a Merrill Lynch account (No. 265-02163) titled 'Westpark Corte Bella Community Association Shared Maintenanc[e].' . . . The Statement shows a transaction on 7/1 described as BBIF Treasury Fund purchase of $104,950 and another deposit of $100,000 described as Preferred Deposit (Bus) on 7/12. . . . Although the account is labeled as 'Shared Maintenance' there is no indication of when it was created and whether it is a Shared Reserve Account funded by Westpark and Plaintiff as contemplated by the Arbitrator's Award. The Court is inclined to continue the hearing to allow Westpark to submit further evidence showing that the Merrill Lynch account (No. 265-02163) titled 'Westpark Corte Bella Community Association Shared Maintenanc[e]' was created in compliance with paragraph 2 of the Arbitrator's Award; and that the two deposits for $104,950 and $100,000 were made in compliance with paragraph 3 of the Arbitrator's Award." The court set a supplemental briefing schedule.

_____

[2] At some point, Westpark's request for a temporary injunction was deemed also to be a motion to recall the writ of execution and to quash the notice of levy. The minute order entered on June 22, 2020 refers both to the OSC and a motion by Westpark to recall the writ of execution and to quash the notice of levy.

8

As part of its supplemental briefing, Westpark submitted a declaration from Katie Vos, the accounting manager of Optimum Professional Property Management (OPPM), Westpark's then current property management company, and the opening statement for the Shared Reserve Account. This evidence showed the shared reserve account had been funded with a transfer of $104,950 from Westpark's normal reserve account and $497,791.86 in securities transferred from Westpark.

The Villas objected to the Vos declaration on the grounds that OPPM was not Westpark's property manager until October 2015, Vos did not prepare the financials for Westpark until November 2015, and all of her testimony was hearsay. The Villas argued the court did not have jurisdiction to hear the OSC and was permitted to consider only evidence from after August 2019 as to any payments made by Westpark.

In response to the Villas' opposition, Westpark submitted a supplemental declaration from Vos in which she testified she had requested the opening statement for the shared reserve account directly from Merrill Lynch, as well as the statement for the corresponding dates for the general reserve account.

At the hearing on July 27, 2020, the court announced it had tentatively decided to deny the OSC and motion to quash based on the court's concern that Vos's declarations were not based on personal knowledge. The court stated it was inclined to continue the motion in order for Westpark to submit a revised declaration "as I think we need to know what has happened here." Counsel for the Villas requested the opportunity to depose Vos. The court denied the request and informed counsel he could argue the Vos declaration was insufficient. After hearing argument from counsel, the court changed its tentative ruling and decided to continue the matter to permit Westpark to submit an amended declaration from Vos or new declarations to address whether the arbitration award had been satisfied. The Villas was permitted to submit further opposition.

9

Westpark submitted a declaration from Rio Ramos, who in 2014 was employed as a junior accountant at Keystone Pacific Property Management (Keystone), the management company for Westpark from December 2005 through October 2015. In his declaration, Ramos testified that in the spring of 2014 he was told that Westpark and the Villas had stipulated to an arbitration award that required Westpark to open a dedicated shared reserve account for the reserves related to the Shared Facilities Easement Agreement and that Westpark was to fund the Villas' $100,000 initial balance of the shared reserve account. Ramos testified that Westpark maintained its normal reserve account with Merrill Lynch and that Westpark opened the shared reserve account at Merrill Lynch in June 2014 to comply with the arbitration award. Ramos identified the documents he reviewed to prepare his declaration and attached the opening statement for the shared reserve account.

Ramos testified in his declaration: "Westpark transferred $104,950 in cash from the normal reserve account, along with $497,791.86 in securities into the shared maintenance account. Of the cash transfer, $100,000 was to fund the Villas' portion of the shared maintenance account as required by the Arbitration Award, with the remaining balanc[e] of cash and securities funding Westpark's portion of the shared maintenance account."

In its supplemental opposition, the Villas challenged Ramos's declaration as "window dressing." However, the Villas did not present evidence to counter Ramos's declaration that in June 2014, Westpark had transferred $100,000 to the shared reserve account in compliance with the arbitration award.

### IV.

### Order Granting Motion to Recall the Writ of Execution and Quash the Notice of Levy

By minute order entered on August 24, 2020, the trial court granted Westpark's motion to recall the writ of execution and quash the notice of levy. The court

10

considered the arbitration award and found that it required Westpark to open a shared reserve account and to fund the account with $100,000. The court also considered the judgment and found it "is not inconsistent with" the arbitration award and states the arbitration award "'is confirmed in all aspects and that a Judgment be entered in conformity therewith.'" The court concluded, "[t]he Judgment read in accordance the Award of the Arbitrator requires the creation of a dedicated Shared Reserve Account to be funded by Westpark with $100,000 and not a direct payment of $100,000."

The trial court found that the Ramos declaration established that Westpark had satisfied the judgment by complying with the terms of arbitration award: "R[amos] attests that of the cash transfer, $100,000 was to fund the Villas' portion of the Shared Maintenance Account as required by the Arbitration Award, with the remaining balance of cash and securities funding Westpark's portion of the shared maintenance account. . . Westpark has therefore sufficiently shown that in compliance with the Arbitration Award, it created a Shared Reserve Account and funded the account with $100,000."

## DISCUSSION

## I.

## Standard of Review

An order recalling or quashing a writ of execution is reviewed under the abuse of discretion standard. (*Potts v. Superior Court, supra*, 229 Cal.App.2d at p. 694.) In applying the abuse of discretion standard, the reviewing court measures the evidence presented to the trial court against the range of options permitted by the established legal criteria. (*Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089.) The scope of the trial court's discretion is limited by the governing law, and an action that "'"transgresses the confines of the applicable principles of law"'" constitutes an abuse of discretion. (*Ibid.*)

11

The trial court's factual findings are reviewed under the substantial evidence standard while the trial court's legal conclusions are reviewed de novo.  (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1230.)  "It is up to the trial court to weigh the evidence, resolve conflicts in it, and assess the credibility of witnesses.  [Citation.]  The reviewing court resolves any evidentiary conflicts most favorably to the trial court's ruling [citation], and, if more than one reasonable inference can be deduced from the facts, the reviewing court must accept the inference supporting the trial court's decision [citation]."  (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 789 (*Cornerstone*).)

## II.

### The Trial Court Correctly Interpreted the Meaning and Scope of the Judgment

The Villas argues the judgment required Westpark to pay the Villas $100,000 plus interest and the court's order granting the motion to recall the writ of execution and quash the notice of levy constituted an improper modification of the judgment that was beyond the court's jurisdiction.  As the judgment was final, the Villas argues it could be modified only by means of a new trial or appeal.

The trial court did not modify the judgment or act beyond its jurisdiction.  Nor did the trial court disregard the principle of finality of judgments.  In ruling on Westpark's motion to recall the writ of execution, the trial court was called upon to interpret the meaning of the judgment and determine its scope.  The trial court correctly interpreted the judgment in a way that made it conform to the arbitration award.

The interpretation of a judgment is a question of law for the court.  (*Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1205.)  "[T]he 'same rules apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing.'"  (*Estate of Careaga* (1964) 61 Cal.2d 471, 475.)  If the language of the judgment is uncertain, judicial intent is determined by the totality of the

12

circumstances. (*In re Ins. Installment Fee Cases* (2012) 211 Cal.App.4th 1395, 1429-1430.) "Thus, we construe the judgment as a whole to give effect to its obvious intention [citation], and in the process we can resort to the entire record supporting the judgment [citation]." (*In re Marriage of Farner* (1989) 216 Cal.App.3d 1370, 1376.) We construe any ambiguity in the judgment in a manner making it "'lawful, operative, definite, reasonable and capable of being carried into effect,'" and we avoid an interpretation that would make the judgment "'extraordinary, harsh, unjust, inequitable or which would result in absurdity.'" (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 989.)

We, as the trial court, must resolve conflicting interpretations of the judgment. The Villas asserts the judgment required Westpark to pay it $100,000 and relies on the provision in the judgment providing for the Villas to "recover the sum of $100,000, together with interest thereon at the rate of 10% per year from July 3, 2014." Westpark asserts the judgment required only that it open the shared reserve account and fund it with $100,000 to cover the Villas' balance. Westpark relies on the provisions in the judgment providing that "the declaratory relief specified in paragraphs 2, 4 and 8 of the stipulated award will remain in perpetuity" and that "[o]n or before July 3, 2014, [Westpark] will create a dedicated Shared Reserve Account funded by both [Westpark] and The Villas."

The most plausible interpretation of the judgment, construed as a whole, and with resort to the entire record, is that it required Westpark to open the shared reserve account and fund it with $100,000 on behalf of the Villas. The judgment did not require Westpark to pay $100,000 directly to the Villas. The order granting the Villas' petition to confirm the arbitration award and the judgment were issued together in a single document. The order confirmed the arbitration award "in all aspects" and directed entry of a judgment "in conformity therewith." The plain meaning of this language is that the

13

judgment to be entered had to conform to the arbitration award and therefore could not add to or vary its terms.

The judgment, in conformity with the arbitration award, specifically states that "[o]n or before July 3, 2014, [Westpark] will create a dedicated Shared Reserve Account funded by both [Westpark] and The Villas." The proviso in the judgment that the Villas recover $100,000 plus interest from Westpark must refer to the proviso in the arbitration award that "The Villas['] balance for the Shared Reserve account as of 12/31/13 will be $100,000 to be funded by [Westpark]." The judgment had to conform to the arbitration award, and the arbitration award did not require Westpark to pay $100,000 directly to the Villas. The interpretation of the judgment posited by the Villas—that Westbrook is required to pay it $100,000—would make the judgment not in conformity with the arbitration award.

In addition, the interpretation posited by the Villas would render the judgment in excess of the trial court's jurisdiction. A judgment that awards greater relief than stipulated to by the parties is excess of the court's jurisdiction and therefore void. (*Jones, supra,* 60 Cal.App.3d at p. 840.) The Villas and Westpark stipulated to an arbitration award by which Westpark would open the shared reserve account and fund the Villas' balance in it of $100,000. Interpreting the judgment as requiring Westpark to pay $100,000 directly to the Villas would award the Villas relief greater than that to which the parties stipulated in the arbitration award.

## III.

### The Trial Court Had Authority to Recall the Writ of Execution and Quash the Notice of Levy

The Villas argues that Westpark did not have the right to attack the judgment because Westpark did not oppose the motion to confirm the arbitration award on the merits and did not appeal from the judgment. Westpark is not attacking the judgment or challenging its finality. Westpark claims the levy was improper because

14

Westpark had satisfied the terms of the judgment by opening the shared reserve account in 2014 and funding it with $100,000.

The trial court had authority to determine whether the writ of execution and levy were improper. "Certainly a trial court has the power, and it is the trial court's duty, to vacate or recall a writ of execution which has been improvidently issued." (*Jones, supra*, 60 Cal.App.3d at p. 840, citing *Evans v. Superior Court* (1942) 20 Cal.2d 186.) "A writ of execution may be recalled and quashed where the issuance was improperly or inadvertently made." (*Meyer v. Meyer* (1952) 115 Cal.App.2d 48, 49.) "The court's inherent equitable power over its process gives it authority, on motion, to *recall* and/or *quash* a writ of execution improperly or inadvertently issued; or to *vacate* an execution levy." (Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2020) ¶ 6:612, p. 6D-96.)

A writ of execution is improvidently granted and may be recalled if the judgment has been paid. (Ahart, Cal. Practice Guide: Enforcing Judgments and Debts, *supra*, ¶ 6:613, p. 6D-96, citing *Meyer v. Meyer, supra*, 115 Cal.App.2d at p. 49.) The appellate court defers to the trial court's resolution of conflicting evidence on the issue whether the judgment has been paid. (*Meyer v. Meyer, supra*, p. 49.)

Relying on *Del Riccio v. Superior Court* (1952) 115 Cal.App.2d 29 (*Del Riccio*), the Villas argues the trial court lost jurisdiction to recall the writ of execution and quash the levy once the levy had been served on Westpark's bank. In *Del Riccio,* the levy had been served on the judgment debtor's bank *and* the bank had made its return and paid to the sheriff the amount the judgment debtor had on deposit. (*Id*. at p. 30.) In that situation, the appellate court held, the trial court did not have authority to order return of the bank proceeds to the judgment debtor: "When the writ has been regularly issued and executed, money collected, while in the hands of the officer, is property of the judgment creditors and not the debtor. Nothing can be done with it other than to turn it over to the creditor." (*Id.* at p. 31.)

15

*Del Riccio* stands for the proposition that "'[t]he court would not have had authority to order the [judgment creditors] to pay the money into court after they had received it.'" (*Adir Internat., LLC v. Superior Court* (2013) 216 Cal.App.4th 996, 1002.) In the present case, the levy was served on Bank of America, but there is no evidence a return was made to the sheriff. Westpark's bank accounts had been frozen. The trial court's order did not compel the Villas or the sheriff to pay into court or return to Westpark proceeds collected from the levy because no proceeds had been collected.

## IV.

### Substantial Evidence Supports the Trial Court's Finding that Westpark Had Satisfied the Judgment

Based on the Ramos declaration, the trial court found that Westpark had satisfied the judgment by creating the shared reserve account in June 2014 and funding it with $100,000. This factual finding is reviewed under the substantial evidence standard. (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 461-462.) The Ramos declaration and the documents attached to that declaration constitute substantial evidence supporting those findings.[3] The trial court, expressly or impliedly, found Ramos to be credible, and "[w]e accept the trial court's determination of the credibility of witnesses presenting testimony by declaration." (*Cornerstone, supra,* 56 Cal.App.5th at p. 805.)[4]

---

[3] The Villas argues it was denied due process because the trial court did not permit the Villas to cross examine and/or depose witnesses. This argument does not come under its own heading, the Villas provides no record citations for the argument, and the Villas cites no authority other than a general, unspecific citation to the Fifth and Fourteenth Amendments to the United States Constitution. The argument is forfeited. (Cal. Rules of Court, rule 8.204(a)(1)(B), (C); see *Holden v. City of San Diego, supra*, 43 Cal.App.5th at pp. 418-419.)

[4] In *People v. Vivar* (2021) 11 Cal.5th 510, 527-528, the California Supreme Court carved out a narrow exception to this principle when an appellate court reviews a decision on a petition to vacate a conviction under Penal Code section 1473.7. In that

16

# V.

## We Reject the Villas' Claim of Judicial Bias

Before reaching the disposition, we feel compelled to address the Villas' accusation that Judge Zeltzer, who granted the motion to recall the writ of execution and quash the notice of levy, was biased. At page 20 of the appellant's opening brief, the Villas makes this charge: "The VILLAS request the court read [3CT, 613, lines 5-16] to see how flagrant Mr. Susolik and Judge Zeltzer['s] relationship exists, the VILLAS were denied all discovery and Mr. Susolik received whatever he wanted. *The bias is undeniable*." (Italics added.)

Impugning the integrity of the trial judge is a serious matter (see *Martinez v. O'Hara* (2019) 32 Cal.App.5th 853, 858), and "had better be supported by concrete evidence" (*Cornerstone, supra*, 56 Cal.App.5th at p. 793). The Villas and its counsel have provided none. We have read the passage cited and found not even a hint of bias there, or elsewhere in the record. Not getting what you want does not mean the judge is biased against you. At the initial hearing, when Westpark sought a temporary restraining order, Judge Zeltzer disclosed on the record that she had had social contact with attorney Susolik "in connection with attendance at various bench and bar organizations, primarily the Banyard Inn of Court." This is hardly a "flagrant" relationship—it is merely a type of social contact that commonly arises between members of the judiciary and members of the bar who participate in bench-and-bar organizations such as the American Inns of Court. Moreover, the Villas did not object to Judge Zeltzer handling the matter.

Judge Zeltzer stated she could remain fair. Nothing in the record causes us to doubt Judge Zeltzer's sincerity in making that representation or her success in adhering to it.

---

situation, and that one only, the appellate court may independently assess the credibility of a petitioner presenting testimony by declaration. (*People v. Vivar, supra*, at pp. 527-528.)

## DISPOSITION

The order granting Westpark's motion to recall writ of execution and quash notice of levy is affirmed. Respondent to recover costs on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.